# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**IN RE THE APPLICATION OF:**

    **SANDRA PREUSS**,

        Petitioner,

    v.                                             **CIVIL NO. 04-706 DJS/LFG**

    **SVEN PREUSS**,

        Respondent.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon the Petition for Return of Children to Petitioner and Petition for Immediate Issuance of Show Cause Order (collectively, "Petition") filed June 22, 2004 (Docket No. 1). The parties have consented, pursuant to 28 U.S.C. §636(c) and Fed.R.Civ.P. 73 to the undersigned to conduct any and all proceedings in this case, including the entry of a final judgment. The Petition is made pursuant to the Hague Convention and the International Child Abduction Remedies Act seeking return of Petitioner and Respondent's minor children to Petitioner's custody in the Republic of Germany. In order to more expeditiously resolve the Petition, this Court set a hearing on the matter for August 2, 2004, approximately one week after Respondent was available for service of process. In reaching its decision, the Court has relied upon the pleadings and upon the presentations of the parties at the hearing, where counsel requested that the Court accept their arguments as proffers of evidence in the interest of a speedy resolution of the

1

matter.

**FACTUAL BACKGROUND**

Petitioner Sandra Preuss and Respondent Sven Preuss are the parents of Pascal Preuss (age 7) and Daniel Preuss (age 5). Respondent, a member of the German armed forces, was transferred to Alamogordo, New Mexico, in December, 2002. In October of that year Petitioner and Respondent traveled to Alamogordo, signed a lease for a home, and enrolled the eldest child, Pascal, in The German School for the spring term. Upon their return to Germany, Petitioner asserts that she told Respondent that she did not wish to go to the United States and did not want the children to go either. Petitioner asserts that Respondent convinced her to come with him to the United States to avoid having to refund moving expenses provided by the German armed forces, resulting in the entire family arriving in this country on December 23, 2002. In mid-January of 2003, Petitioner and the children returned to Germany.

On June 10, 2003, Petitioner and the children visited Respondent in Alamogordo, having round trip tickets which provided for a return on June 24, 2003. Petitioner alleges that Respondent picked them up in El Paso, Texas, provided Petitioner with a motel room for which he pre-paid through June 24, and took the children to his home. After that, Respondent secured Petitioner's permission to take the children on a holiday, with the provision that he return them by June 23, 2003 and call on Pascal's birthday, June 20. Respondent did not comply with either of those conditions and, on June 24, 2003 Petitioner was forced to return to Germany as she lacked funds to remain in the United States. Petitioner contends that Respondent removed all funds from a joint account in German once she returned there. Respondent disputes the latter facts, alleging that Petitioner arrived in New Mexico with an adult companion as well as the children and choosing to stay in a motel with

2

the companion rather than coming to his house. Respondent asserts that he understood Petitioner and the children were returning to live in the United States after an extended visit to Germany and that funds were available to Petitioner in a joint account in Alamogordo.

Following her return to Germany, Petitioner began legal proceedings to obtain custody of the children and then brought this action, seeking return of the children pursuant to the Hague Convention. Specifically, on August 7, 2003, Petitioner obtained a German family court order holding that she was granted temporary and sole custody of the children. Petition, Exhibit H. Subsequently, on February 11, 2004, the German family court reversed its August 7, 2003 order and held that it did not have jurisdiction to decide the custody of the children, as they were not permanent residents of Germany. Petition, Exhibit I. Unlike the August 7, 2003, proceeding, Respondent was represented in the February, 2004 proceeding. Nonetheless, on June 14, 2004, Petitioner obtained another order from German family court which held that the children were being illegally held by Respondent. Petition, Exhibit K. Respondent was not represented at this proceeding, either. Id. On August 2, 2004, the same day as this Court's hearing, Respondent obtained a German family court order repealing the June 14, 2004 order. Respondent's Exhibit 2 to August 2, 2004 hearing. This court order held that under German law, Petitioner would have to show that Respondent had given his consent to the children returning to German in order to establish their habitual place of abode in that country, which showing was not made. Id. Petitioner and Respondent remain legally married at this time. The foregoing procedural and factual history were provided to this Court before and in the course of its hearing on the Petition.

**STANDARD OF LAW**

Judicial remedies under the International Child Abduction Remedies Act (ICARA) are set out

in 42 U.S.C. §§11601-11610, which Act implements the Hague Convention. A petition for return may be filed in any court which has a jurisdiction over such action and can exercise jurisdiction in the place where the child is located at the time. Federal courts have concurrent original jurisdiction over such matters. "The Convention and ICARA serve, in part, to prevent parents from abducting children in order to avoid the jurisdiction of courts with whose rulings they do not (or believe they will not) agree. The treaty and legislation seek to 'preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court.'" Shealy v. Shealy, 295 F.3d 1117, 1121 (10th Cir. 2002) cert. denied 537 U.S. 1048 (2002), (quoting Friedrich v. Friedrich, 983 F.2d 1396, 1400 (6th Cir.1993)).

Petitioner must show by a preponderance of the evidence that the children have been wrongfully removed or withheld under the meaning of the Convention. 42 U.S.C. §11603(e)(1)(A).

> Article 3 of the Convention: "removal or retention of a child is considered to be wrongful where it is in breach of rights of custody attributed to a person, institution, or any other body...under the law of the State in which the child was habitually resident immediately before the removal or retention; and at the time of the removal or retention those rights were actually exercised... or would have been so exercised but for the removal or retention."

This Court's scope of inquiry under the Hague Convention is limited to the merits of the abduction claim and the merits of the underlying dispute regarding custody are not before it. Shealy, 295 F.3d at 1121. In short, three elements must be shown by the Petitioner to prevail in this case: 1) children were habitually resident of Germany at the time of the removal or retention; 2) the retention was in breach of her custody rights under the laws of the state of habitual residence; 3) she was exercising her custody rights at the time of the retention. Shealy 295 F.3d at 1122 (citing cases & the Hague Convention).

**HOLDING**

Turning to the first element which Petitioner must show, the Hague Convention does not define "habitual residence." <u>Miller v. Miller</u>, 240 F.3d. 392, 400 (4th Cir. 2001). Other circuit courts have held that "there is no real distinction between ordinary residence and habitual residence." <u>Friedrich</u>, 983 F.2d at 1401(cited in <u>Miller</u>, *supra*). As the Sixth Circuit explained: "A person can have only one habitual residence. On its face, habitual residence pertains to customary residence prior to the removal. The court must look back in time, not forward." <u>Friedrich</u>, 983 F.2d at 1401. Nonetheless, this is a fact-specific inquiry that should be made on a case-by-case basis. <u>Miller</u>, 240 F.3d at 400 (citations omitted). Particularly relevant to this case is the principle that judgments rendered in a foreign nation are not entitled to the protection of full faith and credit; however, "American courts will normally accord considerable deference to foreign adjudications as a matter of comity." <u>Id.</u> (quoting <u>Diorinou v. Mezitis</u>, 237 F.3d 133, 142-43 (2d Cir. 2001). Comity is at the heart of the Hague Convention. <u>Id.</u> (citations and internal quotation marks omitted).

Petitioner argues that the children's habitual residence is Germany, pointing out that prior to 2003 they had lived their entire lives in Germany and that all of the principles in this litigation are German citizens. Applying solely the direction from <u>Friedrich</u>, *supra*, that courts should look to the past in determining habitual residence, those facts would result in the determination that Petitioner had met her burden as to the first element for prevailing on the petition. However, this Court is also directed that the determination of habitual residence is to be made on a case by case basis and faced with the February 11, 2004 holding of the German family court that Petitioner and Respondent jointly determined the normal place of residence of the children should be the United States in December, 2002. Petition, Exhibit I. Petitioner contends that she changed her mind about moving to the United States and bringing the children to this country, arguing that her abandoned decision to move to New

5

Mexico cannot change the children's normal place of residence. In contrast, Respondent asserts that Petitioner's decision to return to Germany was not only unilateral but made without his knowledge, with that return being characterized by her as a vacation to see a sick friend of the family.

In light of the dispute over the parties' intent, this Court will rely largely upon the holding of the German family court that the parents decided to move to the United States and establish this country as the normal place of residence for the children. If the United States is the normal place of residence or the "habitual residence" of the children, then Petitioner has failed to meet the first element required for her to prevail. This conclusion does not deprive Petitioner of alternate venues and remedies to obtain full or partial physical custody of the children but it does defeat her petition for their immediate return to Germany.

Alternatively, assuming *arguendo* that Petitioner has established that the children's habitual place of residence is Germany, Petitioner has failed to establish the second of the elements required to prevail; that the children's retention by Respondent was in breach of her custody rights under the laws of Germany. Petitioner obtained two German family court orders holding that the children had been wrongfully or illegally obtained. Petition, Exhibits H, K. However, each of those orders was issued without Respondent's participation and each was vacated by subsequent orders of that court. Petition, Exhibit I, Respondent's Exhibit 2 to the August 2, 2004 Hearing. Petitioner has made no other showing that the retention of the children in the United States is wrongful under German law. At the hearing before this Court, she did not address the issue of German law regarding custody of the children beyond reference to the vacated German family court orders. Consequently, she has failed to satisfy the burden required to obtain relief on the petition.

**IT IS THEREFORE ORDERED** that the Petition for Return of Children to Petitioner and Petition for Immediate Issuance of Show Cause Order filed June 22, 2004 is denied.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**